# $\mathfrak{Staunton}$

J. A. PRUNER V. STATE HIGHWAY COMMISSIONER.

September 13, 1939.

Record No. 2112.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*George A. Pruner, Erma Griffith* and *A. T. Griffith,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *D. Gardiner Tyler, Jr., Assistant Attorney-General,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The Highway Commissioner filed his petition against J. A. Pruner, the owner, for the condemnation of 2.94 acres of land for the uses of the State Highway Commission of Virginia in the construction of highway No. 19 in Russell county. The commissioner alleges that in the construction

of the highway it is necessary to cross the land of J. A. Pruner and that he has made a *bona fide* effort to obtain the necessary title and right of way to the land needed but has been unable to reach an agreement as to price or terms. He prays that commissioners be appointed to ascertain a fair price for the land required and damages to the residue.

Commissioners were appointed by the court and after viewing the premises and hearing testimony they made their report in which they awarded compensation of $2,250.

Counsel for Pruner filed exceptions to the report of the commissioners and a hearing was had. The lower court decided in favor of the Highway Commissioner, overruled the exceptions and confirmed the report of the commissioners.

A portion of the tract of land involved extends into the town of Lebanon and the residue lies immediately adjacent thereto. There are numerous dwellings built and occupied on the old highway No. 19, which borders on the tract and is just a short distance from the land actually taken for the new highway. The commissioners viewed the premises and heard evidence. It is clear that the attorneys for the land-owner endeavored to submit to them evidence of the availability of the tract for subdivision purposes.

The trial court was of opinion that the award was fair and that the commissioners considered all of the proper elements in arriving at it.

The material question raised here is whether or not the commissioners considered the land in question as adaptable for subdivision into town lots on account of its close proximity to the town of Lebanon, and if so, did they take this fact into consideration in awarding compensation?

There seems to be an agreement of counsel for both parties as to the law. Where a landowner's property is taken by eminent domain for a public use he is entitled to be compensated on the basis of the most valuable purpose for which the land is susceptible of being used.

Counsel for the landowner earnestly and repeatedly asserts that the stated rule of law was not applied, while coun-

sel for the Highway Commissioner just as strongly maintains that it was applied and that the commissioners considered all reasonable uses the land might be suited for.

It becomes necessary to look to the evidence in order to ascertain whether the commissioners overlooked a proper element of damage.

When the exceptions to the report were before the trial court the commissioners testified at length as to how they arrived at their award. Three of the four commissioners testified they considered the land taken as useful only for agricultural purposes; that its adaptability for subdivision was adverted to when evidence was heard but no consideration was given it and that if it had been viewed in this light they would have likely increased the award. The fourth commissioner did not say what elements were considered, but simply stated that the report was the result of his carefully considered judgment and made in good faith.

Should the commissioners have considered the land from the standpoint of subdivision purposes as well as farm uses? We think they should. Pruner's tract is located on the south of old highway No. 19, lying partly within the town of Lebanon but the largest portion lying outside of the town. Many residences have been built on the north side of the old highway which runs the entire length of the tract. The new highway cuts through Pruner's land rendering it less valuable for building lots as well as for agricultural purposes. The location and surroundings likely rendered the land available for subdivision and its prospective value as such should have been considered by the commissioners in fixing their award.

It is the duty of commissioners who are charged with determining the value of land which is being taken by eminent domain to consider all uses to which it may be reasonably adapted and to award compensation upon the basis of its most advantageous and valuable use, having regard to the existing business demands of the community or such as may be reasonably expected in the immediate future. The uses to be considered must be so reasonably probable

as to have an effect on the present market value of the land. Purely imaginative or speculative value should not be considered. Compensation must be a full and perfect equivalent for the property. This means that in the appraisal of the land in question its adaptability for subdivision uses should have been considered as an element in estimating the market value,—its use should not have been confined to that of agriculture alone. *Charles* v. *Big Sandy, etc., Railroad Co.,* 142 Va. 512, 129 S. E. 384; *Richmond, P. & C. Railroad Co.* v. *Chamblin,* 100 Va. 401, 41 S. E. 750; *Appalachian Power Company* v. *Johnson,* 137 Va. 12, 119 S. E. 253; and in 18 Am. Jur., Eminent Domain, section 244, page 881, it is written that "when a tract taken by eminent domain is used as a farm, the owner is entitled to have its possible value for building purposes considered * * * ."

The commissioners were considering the amount of their award out of the presence of counsel when one commissioner said to the others that he had heard a friend of the landowner state that $2,250 would be satisfactory to the owner; whereupon another commissioner stated that a man in the bank stated that Mr. Pruner would not be satisfied unless he got $2,500. Of course, these hearsay statements were not admissible and should not have been considered by the commissioners. The fact that the award was fixed at $2,250, one of the figures mentioned in the hearsay testimony, strongly inclines us to believe that it had some influence upon them.

Of course, the compensation allowed is unusually large for 2.94 acres of farming land. The record shows that the damage to the residue was fixed at $750 leaving $1,500 for the land actually taken. We know by common knowledge that farming land is not generally worth $500 per acre, the approximate value fixed here. The record does not disclose what there is about this land that gives it such great value for farming purposes. It is quite possible that another commission in considering the lot value of the land in addition to its agricultural value might be thoroughly justified in fixing an award at less than the $2,250 allowed.

However, there was no exception by the highway commissioner on account of any possible excessiveness of the award and the landowner must take his chances with a new commission as to whether he will receive more or less than what has been awarded him. Regardless of these matters, we are compelled to reverse the judgment for the errors pointed out, which in our opinion were prejudicial in that the landowner has been denied the right to have the land appraised on the basis of its different and most valuable uses, and further because the commissioners received and were likely actuated by illegal hearsay testimony.

The judgment of the trial court is reversed and the case is remanded for further proceedings.

*Reversed.*