COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


FRANK BENJAMIN EDWARDS

v.   Record No. 1095-96-2

LESNEY D. EDWARDS

MEMORANDUM OPINION[*] BY
JUDGE MARVIN F. COLE
MARCH 11, 1997

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Thomas V. Warren, Judge

Robert L. Isaacs for appellant.

No brief or argument for appellee.


Frank Benjamin Edwards (husband) appeals the equitable distribution decision of the circuit court awarding Lesney D. Edwards (wife) $50,266.45 from the sale of the marital residence. The circuit court affirmed the commissioner's report and supplemental report which (i) ruled that an agreement signed by the parties in 1989 was an interim agreement which did not resolve the parties' equitable distribution interests in the marital residence and (ii) effected an equitable distribution of the parties' property. We affirm.

I.

The commissioner's hearing on equitable distribution issues was held in March 1993, and the commissioner filed a report on September 17, 1993. A supplemental hearing was held in March 1994, and the commissioner filed a supplemental report on June

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

22, 1995.  At issue was the effect of an agreement signed by the parties on the day wife left the marital residence.  The one page agreement provided that wife was to move out of the marital residence until further negotiations between the parties took place.  Wife testified that she signed the agreement because she wanted to leave some indication that she was not abandoning her interest in the property, but did not intend to give a gift of half-ownership to husband.  Husband testified he understood the agreement to mean that the proceeds from the sale of the home would be split "half-and-half."

The commissioner's report, which was upheld by the trial judge, stated as follows, in relevant part:

> Under Virginia Code section 20-155, as amended, married persons may enter into agreements with each other to settle their rights and obligations.  The interpretation of such agreements is governed by regular contract law.  In my judgment the August 19, 1989, agreement is a binding contract.  I do not, however, believe that the contract mandates that the proceeds of the sale from the Lee's Landing Property be divided equally between the parties.  The key clause in the contracts reads, "BOTH PARTIES RETAIN EQUAL OWNERSHIP IN ABOVE PROPERTY IT'S [sic] IMPROVEMENTS AND PERSONAL PROPERTY UNLESS FURTHER ACTION DEEMS THIS CONTRACT VOID."
> . . .  In my judgment the phrase "retain equal ownership in above property" refers to continuance of the preexisting ownership of the property.  In other words, Mr. and Mrs. Edwards agreed that they would each retain whatever interest they had in the property at the time the contract was signed.  The contract does not say anything about selling the property or how the proceeds of a sale would be divided.  If the parties had intended for the property to be sold, or for the proceeds of the sale to be divided in any

particular fashion, it would have been easy for them to say so. I conclude, therefore, that the August 19, 1989, contract was an interim agreement designed to protect Mrs. Edwards' preexisting ownership interest in the property, and that it does not require that the proceeds of the sale of the property be divided equally between the parties.

The initial question posed by this appeal is the meaning and effect of the agreement -- a legal issue.

[O]n appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court. Property settlement and support agreements are subject to the same rules of construction and interpretation applicable to contracts generally.

Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987) (citations omitted).

The commissioner's conclusion was based upon a construction of the terms in the agreement. Because the construction of the agreement "can readily be ascertained by this court," id., we are not bound by the commissioner's legal conclusions. Upon our review, however, we hold that the plain language of the agreement supports the commissioner's finding that the agreement was never intended by the parties as their final property settlement agreement. Indeed, the agreement expressly refers to "future negotiations" between the parties and states that the parties "retain equal ownership." Those provisions clearly reflect the intention to retain the status quo until completion of a final

agreement. A plain reading of the agreement leads to the legal conclusion that its effect was the creation of an interim agreement designed to preserve the status quo. Therefore, we affirm the trial judge's decision to uphold the commissioner's interpretation of the contract.

## II.

Husband also contends that the commissioner erred in not allowing him leave to change an answer to an interrogatory relating to the value of a life insurance policy. At the commissioner's hearing, husband testified that the value given in the answer was erroneous, yet husband did not know the correct value. The commissioner, determining that the case needed to be resolved, utilized the value listed in the answer.

A "'commissioner is a quasi judicial officer.'" Brown v. Brown, 11 Va. App. 231, 234, 397 S.E.2d 545, 547 (1990) (citation omitted). The conduct of the commissioner's hearing, like the conduct of a trial, is committed to the sound discretion of the presiding judicial officer. See Cunningham v. Commonwealth, 2 Va. App. 358, 365, 344 S.E.2d 389, 393 (1986).

Here, husband signed the interrogatory answers and asserted that the value of the life insurance policy was $2,358.91. At the March 25, 1993 commissioner's hearing, he claimed this figure was incorrect, yet did not know the correct figure. As of the filing of the commissioner's report on September 17, 1993, husband had not provided any additional evidence of the value of

- 4 -

the policy.  Under these circumstances, we cannot say that the commissioner abused his discretion in not granting husband leave to change his interrogatory answer.

### III.

Husband contends that the commissioner erred in determining the monetary value of husband's pre- and post-marital contributions to the marital residence.  On appeal, the circuit court's decision affirming the commissioner's report is presumed correct.

> The commissioner's report is deemed to be prima facie correct.  The commissioner has the authority to resolve conflicts in the evidence and to make factual findings.  When the commissioner's findings are based upon ore tenus evidence, "due regard [must be given] to the commissioner's ability . . . to see, hear and evaluate the witness at first hand."  Because of the presumption of correctness, the trial judge ordinarily must sustain the commissioner's report unless the trial judge concludes that it is not supported by the evidence.

Brown v. Brown, 11 Va. App. 231, 236, 397 S.E.2d 545, 548 (1990) (citations omitted).  "This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report."  Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296 (1984) (citation omitted).  This Court must affirm the trial court's decision unless it is plainly wrong or without evidence to support it.  McLaughlin v. McLaughlin, 2 Va. App. 463, 466-67, 346 S.E.2d 535, 536 (1986).

In making a division under Code § 20-107.3, the commissioner found that, while the proceeds from the sale of the wife's previous home were transmuted into marital property, husband failed to present evidence quantifying the value of his post-marital monetary and nonmonetary contributions to that property. In reaching his decision as to the contributions of the parties, the commissioner considered the substantive monetary interest wife had in the property, husband's supervision of the construction of the marital residence, and the financial contributions which husband was able to prove. Based on the evidence which husband did produce, the commissioner credited him $13,500 for his service as general contractor on the marital residence and $3,276 for his documented expenditures. In sum, the commissioner recommended an award of $16,776 to husband and $50,266.45 to wife from the sale of the marital residence, with any remaining sale proceeds to be divided equally.

The circuit court found the commissioner's findings to be "reasoned," "measured" and "supported by credible evidence." Credible evidence supports the commissioner's factual findings and we cannot say that the commissioner or trial judge erred in valuing husband's contributions.

Accordingly, the decision of the circuit court is affirmed.

<u>Affirmed.</u>

- 6 -